UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR A SEARCH WARRANT AUTHORIZING THE SEARCH OF ONE GOLD IPHONE SEIZED ON DECEMBER 3, 2020 | ) ) M.J. No. 21-4015-DHH ) ) ) |

AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent Eugene M. DiFiore, being duly sworn, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since 2005. Since that time, I have been assigned to the New England Division. I am currently assigned to Task Force 4, Cross Border Initiative, based in North Andover, Massachusetts. Prior to my employment with the DEA, I was employed as a Police Officer with the City of Methuen (Massachusetts) from 1995 to 1999, after which I transferred to the Amesbury Police Department in Amesbury, Massachusetts from 1999 until accepting a position as a criminal investigator with the Drug Enforcement Administration in February of 2005.

2. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic Agent Academy in Quantico, Virginia, and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the

execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4.      Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## PURPOSE OF AFFIDAVIT

5.      I submit this affidavit in support of an Application for a Search Warrant authorizing agents to search a gold iPhone cellular telephone seized from Juan Alberto ROSA-MARTE, on December 3, 2020 (hereinafter the "Target Telephone"). The Target Telephone currently is in the custody of Immigration and Customs Enforcement, Homeland Security Investigations at 10 Causeway Street, Boston, Massachusetts 02222. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that the Target Telephone has been stored in a manner in which its

contents are, to the extent material to this investigation, in substantially the same state as they were when the Target Telephone first came into investigators' possession.

6. As set forth below, there is probable cause to believe that the Target Telephone contains evidence, fruits, and instrumentalities of violations of federal law, including possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) (the "Target Offense").

7. As part of my duties, I participated in an investigation that led to the arrest of ROSA-MARTE at 73 Winthrop Avenue, Lawrence, Massachusetts, on December 3, 2020. I am familiar with the facts and circumstances leading to ROSA-MARTE's arrest and the seizure of the Target Telephone. Since the Affidavit is being submitted for the limited purpose of securing the requested Search Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

8. In approximately November 2020, agents received information from a confidential source (hereinafter, the "CS") that ROSA-MARTE, who was identified via nickname and photograph, was a cocaine distributor who resided in New York. The CS is cooperating with law enforcement in the hopes of receiving consideration related to a pending drug charge. The CS has a criminal history that includes arrests but not convictions for drug charges. Information provided by the CS has been corroborated by law enforcement and is believed to be reliable.

9. During the week of November 16, 2020, ROSA-MARTE offered the CS kilograms of cocaine for $45,000 each. On December 1, 2020, the CS, acting at the direction of

law enforcement, attempted to contact ROSA-MARTE at telephone number (929) 307-7619 to arrange to purchase three kilograms of cocaine. ROSA-MARTE did not answer the telephone. Later that day, the CS received a call from ROSA-MARTE. The call was recorded. During the call, ROSA-MARTE agreed to sell the CS three kilograms of cocaine for $45,000 each on December 3, 2020.

10. On December 2, 2020, the CS and ROSA-MARTE spoke over the phone several times and during recorded calls agreed that ROSA-MARTE would travel to Lawrence, Massachusetts, on December 3, 2020, to deliver three kilograms of cocaine to the CS. On December 3, 2020, ROSA-MARTE updated the CS as to his whereabouts as he traveled to Massachusetts. The CS agreed to pick up ROSA-MARTE at the Kentucky Fried Chicken on South Union Street in Lawrence, Massachusetts. These phone calls on December 3, 2020, were not recorded.

11. On December 3, 2020, agents met with the CS and searched the CS and the CS's vehicle for currency or contraband with negative results. The CS then went to the Kentucky Fried Chicken on South Union Street in Lawrence.

12. At approximately 12:55 p.m., agents conducting surveillance of the Kentucky Fried Chicken on South Union Street in Lawrence observed a black Mercedes transportation van arrive in the parking lot of the Stadium Plaza in Lawrence, Massachusetts, which is where the Kentucky Fried Chicken is located. Agents observed the CS exit the CS's vehicle, stand in the parking lot and wave. Agents then observed ROSA-MARTE approach the CS carrying a blue suitcase and a black satchel. ROSA-MARTE and the CS then entered the CS's vehicle. The CS drove to a T-Mobile store in the same shopping center and parked outside. The CS exited the CS's vehicle and signaled to surveillance officers that ROSA-MARTE was in possession of the

drugs. The CS then entered the T-Mobile store. ROSA-MARTE exited the CS's vehicle and stood beside the car.

13. At that time, agents approached ROSA-MARTE and secured him. Another law enforcement officer then retrieved the blue suitcase that ROSA-MARTE had been carrying earlier from the back seat of the CS's vehicle. Inside the blue suitcase, underneath clothes, agents located a brown paper shopping bag. Inside the brown paper shopping bag, agents located a black plastic bag containing two white plastic bags. Each white plastic bag contained a clear Ziploc-style bag containing a white powdery substance.

14. ROSA-MARTE was arrested. Agents seized the Target Telephone from ROSA-MARTE. Agents dialed telephone number (929) 307-7619. The Target Telephone rang with the calling agent's number.

15. The white powdery substance field tested positive using a TruNarc device for cocaine. Based on my training and experience, I believe that each Ziploc-style bag contains approximately one kilogram of cocaine.

## DRUG TRAFFICKERS' USE OF CELLULAR TELEPHONES

16. Based on my training and experience, I know that a cellular telephone is a handheld wireless device used primarily for voice communication through radio signals. Cellular telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending,

receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include GPS technology for determining the location of the device. Based on my training, experience, and research, I know that the Target Telephone has some or all of the capabilities described above. In my training and experience, examining data stored on devices of this type can show, among other things, evidence that reveals or suggests who possessed or used the device, as well as his criminal accomplices.

17. Based upon my training and experience, as well as the training and experience of other law enforcement agents I have worked with, I am aware that drug traffickers commonly possess and use multiple cellular telephones simultaneously to conduct their drug trafficking activities. It is common for these cellular telephones to be retained, although not necessarily used, for months or longer by drug traffickers in their vehicles, residences, and businesses. Drug traffickers often do not discard their cellular telephones immediately after they stop actively using them. Therefore, while it is common for drug traffickers to stop using cellular telephones frequently, it is far less common for drug traffickers to discard their cellular telephones after they switch to new cellular telephones. As a result, I am aware that collections of cell phones have been found during drug trafficking search warrants that have included cell phones that were no longer being used by a particular drug trafficker but had nevertheless been retained.

18. Evidence of drug crimes often is found in cell phones and smart phones used by drug traffickers. Such evidence can include internet searches for drug-related paraphernalia, addresses, or telephone numbers, as well as incriminating communications via emails, text messages or instant messages. From my training, experience, and information provided to me by

other agents, I am aware that individuals commonly store records of the type described in Attachment B on their cellular telephones.

19. It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging, can now be performed from many cell phones. Moreover, the particular numbers of and the particular numbers dialed by particular cellular telephones can be evidence of drug trafficking. Such numbers can confirm relationships among and between co-conspirators, as well as the occurrence of certain events.

20. As with most electronic/digital technology items, communications made from an electronic device, such as a cell phone, are often saved or stored on the device. Storing this information can be intentional, for example, by saving an e-mail as a file or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cell phone. In addition to electronic communications, a user's Internet activities generally leave traces in the web cache and Internet history files. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a cell phone, used such a device.

21. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they often can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on an electronic storage device such as a computer, the data contained in the file often does not actually disappear; rather, that data often remains on the

device until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on a device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from an electronic storage device depends less on when the file was sent, downloaded, or viewed than on a particular user's operating system, storage capacity, and habits.

22.    Based on all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth herein, I believe that December 3, 2020, ROSA-MARTE transported two kilograms of cocaine to Massachusetts for distribution.  I further believe that evidence of his drug trafficking activity will be found on the Target Telephone.

## CONCLUSION

23.    Based on the foregoing, I believe there is probable cause to believe that the Target Telephone presently contains the items set forth in Attachment B hereto, which is incorporated herein by reference, and that those items constitute evidence of the commission of a criminal

//

//

offense, specifically, violation of Title 21, United States Code, Section 841. Accordingly, I respectfully request the Court issue a search warrant for the Target Telephone.

    I declare that the foregoing is true and correct.

*Eugene M. DiFiore/sdv*
Eugene M. DiFiore
Special Agent
Drug Enforcement Administration

Subscribed and sworn to by telephone in accordance with Fed. R. Cr. P. 4.1 this 25th day of January 2021.   9:48 A.M.

*David H. Hennessy*
HONORABLE DAVID H. HENNESSY
United States Magistrate Judge
District of Massachusetts

## ATTACHMENT A

<u>Description of the Property To Be Searched</u>

A gold iPhone seized from Juan Alberto ROSA-MARTE at 73 Winthrop Avenue, Lawrence, Massachusetts, on December 3, 2020 (HSI seizure number 2021sz0027568), currently in the custody of Immigration and Customs Enforcement, Homeland Security Investigations, 10 Causeway Street, Boston, Massachusetts 02222.

# ATTACHMENT B

## Items to be Seized from the Target Telephone

All records and data from January 1, 2020, in any format whatsoever (digital, electronic, or otherwise) that constitute evidence, fruits, or instrumentalities of violation of 21 U.S.C. § 841 (drug distribution), including, without limitation:

a. Names and contact information that have been programmed into the device (including but not limited to contacts lists) of individuals who may be engaged in drug trafficking;

b. Logs of calls (including last numbers dialed, last calls received, time of calls, missed calls, and duration of calls) both to and from the device;

c. Text messages both sent to and received from the device (including any in draft form) relating to or referencing drug trafficking and/or referencing individuals engaged in drug trafficking;

d. Incoming and outgoing voice mail messages both to and from the device relating to or referencing drug trafficking or individuals engaged in drug trafficking;

e. GPS data;

f. Browser messages and/or internet communications (e.g., e-mail, text messages) both to and from the device (including any in draft form) relating to or referencing drug trafficking or individuals engaged in drug trafficking;

g. Documents, photographs, or videos in any format, including but not limited to Microsoft Word or Adobe PDF files, relating to or referencing drug trafficking or individuals engaged in drug trafficking;

h. All data within the device evidencing ownership, possession, custody, control, or use of the device; and

i. Service Provider handset unlock password(s) and any other passwords used to access the electronic data described above.